1
2
3
4
5
6
7

8                      UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JAVIER ANGEL MALDONADO,                 Case No.  1:22-cv-01518-HBK (PC)

12                    Plaintiff,             ORDER GRANTING DEFENDANTS'
                                             MOTION FOR SUMMARY JUDGMENT[1]
13          v.
                                             (Doc. No. 26)
14

15   MICHAEL BOUDREAUX, et al.,

16                    Defendants.

17

18          Pending before the Court is Defendants' Motion for Summary Judgment filed May 28,

19   2024.  (Doc. No. 26, "Motion").  Plaintiff timely filed an Opposition, (Doc. No. 27), and

20   Defendants filed a Reply (Doc. No. 29).  On September 17, 2024, the Court heard oral argument

21   on the Motion.  (Doc. No. 38).  Finding no genuine dispute of material fact, the Court grants

22   Defendants' Motion.

23                              **I.  BACKGROUND**

24          **A.  Procedural History**

25          On November 23, 2022, Plaintiff Javier Angel Maldonado, represented by counsel, filed

26   this federal and state civil rights action against Defendants County of Tulare, California ("The

27   _____

28   [1] Both parties have consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c)(1).  (Doc.
     No. 11).

County"), Michael Boudreaux, in his official capacity as Tulare County Sheriff, ("Boudreaux"), and "one or more of his deputies." (Doc. No. 1). The Complaint alleges three separate causes of action (First) False Arrest Under State Law; (Second) Deprivation of Rights Under 42 U.S.C. § 1983; and (Third) Violation of the Bane Act (Cal. Civ. Code section 51.2). The events giving rise the claims occurred on June 3, 2022[2] in Lindsay, CA. In summary, Plaintiff was hosting a private graduation party for his daughter when unnamed deputies contacted Plaintiff in response to noise complaints, issued him a verbal warning concerning the noise, followed by a citation for the noise, and eventually arrested Plaintiff. (*See generally* Doc. No. 1). Plaintiff claims he was falsely arrested without warrant or probable cause and deputies used excessive force in effectuating his arrest and transport to the jail in violation of state and federal law. (*Id*.). As relief, Plaintiff seeks $5,000,000.00 in compensatory damages, $10,000,000.00 in general damages, costs of suits, and attorney fees. (*Id*. at 17).

Defendants filed an Answer on January 11, 2023. (Doc. No. 6). The Court entered a Case Management and Scheduling Order (Doc. No. 13). After the parties engaged in and completed discovery, Defendants timely filed the instant Motion for Summary Judgment.

**B. The Pleadings and Record Before the Court**

Is support of their Motion, Defendants submit: (1) a Memorandum of Points and Authorities (Doc. No. 26-1); (2) the Declaration of Scott O'Neill with exhibits, including the three dispatch calls from June 3, 2022 and the bodycam recordings for Deputies Cook, Andrade, and Godinez from the June 3, 2022 incident (Doc No. 26-2 at 1-14); and (3) a Statement of Undisputed Facts (Doc. No. 26-3). Defendants argue they are entitled to summary judgment on Plaintiff First Cause of Action (False Arrest), because the deputies had probable cause to arrest Plaintiff for both Penal Code sections 415(2) and 148(a)(1), which provides a complete defense to a claim for false arrest. (Doc. No. 26-1 at 12-16). They argue that summary judgment is warranted on Plaintiff's Third

---

[2] According to an infraction complaint filed against Plaintiff and attached to Defendants' MSJ, the incident giving rise to the Complaint occurred on June 3, 2022, (Doc. No. 26-2 at 42), while Plaintiff's Complaint states the incident occurred on June 4, 2022 (Doc. No. 1 at 4). At oral argument, the Parties agreed that the incident occurred late in the evening on June 3, 2022.

Cause of Action (Bane Act) because the body worn camera footage from the deputies refute Plaintiff's claims that the deputies used excessive force or threatened Plaintiff with violence.  (*Id*. at 17).  Additionally, as to Counts 1 and 3, Defendants contend that the County should be dismissed as duplicative because a suit against Sheriff Boudreaux in his official capacity is equivalent to a suit against the Tulare County Sheriff's Office, which is an agency within the County of Tulare. (Doc. No. 26-1 at 17-18).  Finally, Defendants state that Plaintiff's voluntarily agreed to dismiss his Second Cause of Action against all Defendants.  (Doc. No. 26 at 2).

Plaintiff timely filed an Opposition. (Doc. No. 27).   In support, Plaintiff submitted a Memorandum of Points and Authorities (Doc. No. 27); a Statement of Material Facts in Opposition (Doc. No. 27-1); the Declaration of Plaintiff, Javier Maldonado (Doc. No. 27-2); and the Declaration of Counsel, William A. Romaine (Doc. No. 27-3).  Plaintiff denies he agreed to dismiss Count 2 as to all Defendants.  (Doc. No. 27 at 4-5).  Rather, Plaintiff states that he agreed to dismiss the County of Tulare altogether from the action but not any other Defendant.   (*Id*. at 4:9-14) ("Defendant's moving papers allude to an agreement by plaintiff to dismiss County of Tulare from this action . . . that is a correct rendition of the agreement").   At oral argument, however, the Parties advised that Plaintiff only agreed to voluntarily dismiss the County of Tulare as to the Second Cause of Action. As to Count 1, Plaintiff argues there is a genuine dispute whether the sheriff's deputies had probable cause to arrest him for violation of Penal Code § 415(2), because he claims the volume at the party was not unreasonable, the music was not being played during the County's "quiet hours" of 11:00 p.m. to 8:00 a.m., and Plaintiff was cooperative with law enforcement and willing to lower the volume. (*Id*. at 11-17).  The Opposition does not address whether Defendants had probable cause to arrest Plaintiff under Penal Code § 148(a)(1).  (*See generally id*.).  At oral argument, Plaintiff's counsel argued that there was no probable cause for arrest under Penal Code 148(a)(1) because Plaintiff ultimately complied with the sheriff's deputies' orders and because a delay in providing identifying information does not amount to a violation of Penal Code 148(a)(1). Alternatively, counsel contends that the issue of whether Plaintiff failed to comply quickly enough

1   with the officer's inquiries is a question for the jury.  As to his construed claim of excessive force[3]

2   and Bane Act claim, Plaintiff reiterates his position that that the arresting deputy used "overly tight

3   handcuffing" and "rough handling" resulting in injuries.  (*Id*. at 18).

4          In Reply, Defendants assert the undisputed facts conclusively refute several of Plaintiff's

5   claims, including whether he was the owner of the property where the incident occurred, whether

6   the volume of the music at the June 3, 2022 party was unreasonable, whether deputies used

7   excessive force, whether Plaintiff complained multiple times of overly tight handcuffs, and

8   whether Plaintiff paid for the band that played at the June 3, 2022 party.  (*See* Doc. No. 29 at 1-3;

9   *see generally* Doc. No. 29-1).[4]  Defendants also argue that the only remaining named Defendants

10  in this action are Sheriff Michael Boudreaux in his official capacity and, as to Counts 1 and 3, the

11  County of Tulare.  (Doc. No. 29 at 4).  Defendants suggest Plaintiff no longer proceeds against

12  the Doe Defendants in any capacity because they were never named beyond a generic reference to

13  "and one or more of [Boudreaux's] deputies."  (*Id*.).  As to the *Monell*[5] claim against Boudreaux,

14  Defendants contend Plaintiff fails to establish an underlying constitutional violation by any of the

15  Boudreaux's deputies and thus cannot show an unconstitutional pattern, practice, or policy by the

16  Sheriff.  (*Id*. at 5-6).

17         **II.  LEGAL STANDARD FOR SUMMARY JUDGMENT**

18         The "purpose of summary judgment is to pierce the pleadings and to assess the proof in

19  order to see whether there is a genuine need for trial."  *Matsushita Elec. Indus. Co. Ltd. v. Zenith

20  Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).  Summary judgment is appropriate

21  when there is "no genuine dispute as to any material fact and the movant is entitled to judgment

22  as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment should be entered "after adequate

23  ───────────────

24  [3] The Complaint does not articulate a standalone claim of excessive force, but rather appears to incorporate
a federal claim of excessive force under his First Cause of Action.  (Doc. No. 1 at ¶¶ 26-27).

25  [4] In support of the Reply, Defendants include a Reply to Plaintiff's Response to Defendants' Statement of
Undisputed Material Facts and to Plaintiff's Separate Statement of Facts (Doc. No. 29-1), and several

26  exhibits including (1) additional excerpts of Plaintiff's deposition, (2) emails between Plaintiff's counsel
and Defense counsel concerning dismissal of the County of Tulare, (3) Defendants' draft statement of
undisputed facts with preliminary responses by Plaintiff's counsel; (4) booking documents for a 2017

27  arrest of Plaintiff for driving under the influence; and (5) a statement of probable cause signed by Deputy
Godinez for the Jun 3, 2022 arrest.  (*See* Doc. No. 29-2).

28  [5] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the "initial responsibility" of demonstrating the absence of a genuine issue of material fact.  *Id.* at 323.  An issue of material fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the moving party meets its initial burden, the burden then shifts to the opposing party to present specific facts that show there to be a genuine issue of a material fact.  *See* Fed R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586.  An opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 587.  The party is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that a factual dispute exists.  Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11.  The opposing party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987).  However, "failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.  In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." *Triton Energy Corp. v. Square D. Co., 68* F.3d 1216, 1221 (9th Cir. 1995).

The court must apply standards consistent with Rule 56 to determine whether the moving party demonstrated there is no genuine issue of material fact and showed judgment to be appropriate as a matter of law.  *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993).  "[A] court ruling on a motion for summary judgment may not engage in credibility determinations or the weighing of evidence." *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir.

1    2017) (citation omitted).  The evidence must be viewed "in the light most favorable to the

2    nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party.

3    *Orr v. Bank of America*, NT & SA, 285 F.3d 764, 772 (9th Cir. 2002).  A mere scintilla of

4    evidence is not sufficient to establish a genuine dispute to defeat an otherwise properly supported

5    summary judgment motion.  *Anderson*, 477 U.S. at 252.  And, where a plaintiff fails to properly

6    challenge the facts asserted by the defendant, the plaintiff may be deemed to have admitted the

7    validity of those facts.  *See* Fed. R. Civ. P. 56(e)(2).  Where a plaintiff's sworn statement

8    contradicts a defendant's sworn statement, the court is required to "disregard the latter and credit

9    the former."  *Spencer v. Pew*, 2024 WL 4297515, at *1 (9th Cir. Sept. 16, 2024).  However, "to

10    the extent that the uncontested video evidence from the officers' body cameras establishes the

11    timing and occurrence of events" the court must "'view[] the facts in the light depicted by the

12    videotape.'"  *Spencer* (*quoting Scott v. Harris*, 550 U.S. 372, 380-81 (2007)).

13        The Court has carefully reviewed and considered all arguments, points and authorities,

14    declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and

15    other papers filed by the parties.  The omission to an argument, document, paper, or objection is

16    not to be construed that the Court did not consider the argument, document, paper, or objection.

17    Instead, the Court thoroughly reviewed and considered the evidence it deemed admissible,

18    material, and appropriate for purposes of issuing this Order.

19                     **III.  UNDISPUTED MATERIAL FACTS**

20        Defendants provide a Statement of Undisputed Material Facts.  (Doc. No. 26-3).  Each

21    listed fact cites to sworn declarations, deposition testimony, dispatch recordings, and body worn

22    camera footage.  (*See generally id.*).  The Court notes that Plaintiff submitted only a partial

23    response to Defendant's Statement of Undisputed Material Facts ("SUMF"), addressing five of

24    the 23 facts contained in the SUMF, marking four as "disputed" and one as "undisputed."

25    Plaintiff's Opposition provides no response to the remaining facts, as required by Local Rule

26    260(b).  (See Doc. No. 27-1 at 2-4).  Thus, the Court deems the remaining facts in the SUMF

27    undisputed.  *See* Fed. R. Civ. P. 56(e)(2).

28        Having reviewed the record, the Court finds the following facts to be material and

1    undisputed, unless otherwise noted.

2        • On June 3, 2022, Plaintiff was hosting an outdoor party that included a

3          performance by a live band that was attended by approximately 50 people.  (Doc.

4          No. 26-2 at 27:19-25, 28:17-22, 29:6-16).

5        • On June 3, 2022, at approximately 7:40 p.m., the Tulare County Sheriff's Office

6          responded to a call for service at the location of the party, after dispatch received a

7          call complaining about the noise from a person claiming to be a neighbor.  Plaintiff

8          was advised of the complaint, was told to turn down the music, and that if there

9          were additional complaints, further response might occur.  (Doc. No. 26-2 at 8

10         ¶ 11; 30:19-25, 31:20-32:2, Exh. 4 to Doc. No. 26-2[6]).

11       • On June 3, 2022, at approximately 9:40 p.m., the Sheriff's Office was dispatched a

12         second time to the same address after two additional complaints about the crowd

13         and music were received by the Sheriff.  (Doc. No. 26-2 at 32:24-33:2; 8 ¶ 11;

14         Exhs. 5, 12[7]).

15       • When they arrived on scene, the deputies could hear and feel the music while they

16         were inside their patrol vehicles with the windows rolled up and at some distance

17         down the road from the house.  (Doc. No. 26-2 at 9 ¶ 15).

18       • Upon arrival, the deputies spoke to Plaintiff, advising him that they had received

19         additional complaints from neighbors.  Plaintiff identified himself as the owner of

20         the property.  (Exh. 6 at 0:30-6:07; Exh. 7 at 0:55-6:37).

21       • When one of the deputies asked the band to stop playing, Plaintiff told the officer,

22         "Bro, you can't go over there and do that, man."  (Exh. 6: 2:47-2:58).

23       • Plaintiff indicated multiples times that the party would be continuing until 11:00

24         p.m., and he told the deputies that was a member of the SPOT Program—a

25         program with the Sheriff's Office, and that he knew Sheriff Mike Boudreaux.

26         (Exh. 6 at 0:30-6:07; Exh. 7 at 0:55-6:37).

27

28
[6] Exhibit 4 is the dispatch recording from June 3, 2022.
[7] Exhibits 5 and 12 are the two additional dispatch recordings from June 3, 2022.

- After deputies briefed Sgt. O'Neill about Plaintiff's reaction to the two additional neighbor complaints, Sgt. O'Neill instructed the deputy at the scene to issue a citation for Penal Code section 415 after he determined that facts supporting probable cause for such a violation took place in the presence of officers and prior verbal warnings had been ineffective.  (Doc. No. 26-2 at 9-10 ¶ 16; Exh. 6 at 0:30-6:07; Exh. 7 at 0:55-6:37).

- After Plaintiff was advised he would receive a citation, he made a phone call to a friend named Junior, who argued with Sgt. O'Neill about the ordinance, permits, the law, and opined that the Sheriff's Office and/or other citizens were targeting the Mexican-American community.  (Doc. No. 26-2 at 10 ¶ 17; Exh. 9 at 3:48-11:51).

- Plaintiff refused for several minutes to provide Officer Godinez his name and information for the citation, stating, "hold on" while he talked on the phone, "can you just hold on?" "can you just give me a minute?" "like I said, give me a minute," "give me a minute," "I got a few seconds but can you give me a minute?" "brother, again, you're asking way too many questions" and turning to his friend and telling him in Spanish "they have no right" in apparent reference to the officers.  (Exh. 9 at 4:03-7:20).

- After issuing the citation, Deputy Godinez told Plaintiff, "if we come out here again, I mean, you pretty much know the consequences already."  (Exh. 6 at 3:25-3:35).

- After issuing Plaintiff a citation, but before the deputies had left the scene, Sgt. O'Neill observed Plaintiff set up another large speaker in the front yard and heard amplified music playing from the speaker that could be heard from inside O'Neill's vehicle.  (Doc. No. 26-2 at 11-12 ¶ 20, 34:13-20).

- Sgt. O'Neill concluded, based on the totality of the circumstances, including Plaintiff's comments that the party would continue until 11:00 p.m., his lack of remorse for disturbing his neighbors, and uncooperative behavior toward the

sheriff's deputies, that the violation of Penal Code section 415 was continuing and would resume once the officers left.  (Doc. No. 26-2 at 11-12 ¶ 20).

- As deputies approached Plaintiff, Plaintiff acknowledged he had turned on the music but argued with the officers about whether the music was above 65 decibels.  (Exh. 10 at 0:36-1:06; Exh. 11; Exh. 9).

- Plaintiff told officers "you guys are getting too crazy" and he walked away from the deputy who was speaking to him.  (Exh. 10 at 1:03).

- When deputies attempted to place Plaintiff under arrest for continued violation of Penal Code section 415, Plaintiff refused to comply with their repeated orders to put his hands behind his back, saying, "You can't" and "you aren't going to do this in front of my family."  (Exh. 10 at 1:10-2:30, Exh. 11 at 1:18-2:40; Exh. 9 at 22:08-26:39).

- As Plaintiff continued to refuse the officer's instructions, other partygoers began to gather around the deputies, becoming angry and confrontational.  (Exh. 10 at 1:10-2:30, Exh. 11 at 1:18-2:40, Exh. 9 at 22:08-25:56).

- Approximately ten seconds elapsed from the time Plaintiff was asked to put his hands behind his back for the last time until he was escorted off the property.  (Exh. 10 at 1:10-2:30; Exh. 11 at 1:18-2:40; Exh. 9 at 22:08-25:56).

- The body camera footage does not depict any violence or threat of violence made by any officer during the arrest.  (Exh. 9 at 23:00-32:51).  Plaintiff disputes this, pointing to the statement in his declaration that officers "started shoving people in the crowd" after they arrested him.  (Doc. No. 27-2 at 7 ¶ 18).  But this statement, and the general assertion that sheriff's deputies were violent or threatened violence, is contradicted by the body worn camera which show only that officers pressed their way through the crowd that was surrounding them to leave the residence.  (*See* Exh. 9 at 23:00-32:51; *see Spencer v. Pew*, 2024 WL 4297515, at *1 (9th Cir. Sept. 16, 2024).  Thus, the Court finds the video feed contradicts that any deputy was violent or threatened violence.

- The body camera footage captures Plaintiff's arrest and does not depict officers handling Plaintiff roughly, prodding and palpating intrusively around Plaintiff's private parts, or making any rude comments about Plaintiff's physical stature during the arrest. (Exh. 9 at 25:06-25:16). The footage does not capture Plaintiff making any complaints about rough handling or rude comments by the sheriff's deputies. (*Id.*). Plaintiff disputes this and cites for support to a portion of his declaration that contains no factual assertions as to rough handling or rude comments by the deputies. (Doc. No. 27-1 at 2-3). Thus, the Court deems the fact undisputed. *See* Fed. R. Civ. P. 56(e)(2); *see also Spencer*, 2024 WL 4297515 at *1.

- Plaintiff first complains about the tightness of his handcuffs after Plaintiff has been transported to the jail, at which time Plaintiff states, "You can loosen up these handcuffs, they're too damn tight." (Exh. 9 at 26:26-48:15; Doc. No. 26-2 at 35:18-20). The entire ride from the residence to the jail is captured on video. The only other verbal exchange captured during Plaintiff's transportation to the jail is Plaintiff requesting that Deputy Godinez to turn on the air conditioning, which Godinez promptly does. (Exh. 9 at 26:26-48:15). Plaintiff disputes this, claiming he asked at some earlier point for the handcuffs to be loosened. (Doc. No. 27-1 at 3). However, he only cites for support to a passage in his declaration that contains no factual assertions regarding overly tight handcuffs. (*See id.*). Body camera footage exists from the moment Plaintiff is placed in handcuffs, walked toward, and placed in the patrol car, and throughout his transport to the jail in the patrol vehicle. Other than the one complaint about the tightness of handcuffs upon his arrival to the jail, Plaintiff made no other complaints about the handcuffs during his transport to the jail. Thus, the Court deems the fact undisputed. *See* Fed. R. Civ. P. 56(e)(2); *see also Spencer*, 2024 WL 4297515 at *1.

- Upon arrival at the jail, Officer Godinez took Plaintiff to the lighted area of the facility and Plaintiff's handcuffs were checked and loosened within 35 seconds of

10

Plaintiff's request to loosen them.  (Exh. 9 at 48:21-48:55).

- Plaintiff did not receive any medical treatment related to his wrists or other injuries resulting from the arrest, nor did he incur any medical expenses for any injuries resulting from his arrest.  (Doc. No. 29-2 at 9).

### IV.  APPLICABLE LAW AND ANALYSIS

**A.  First Cause of Action -** False Arrest under state law against unknown deputies, the County of Tulare and Sheriff Boudreaux in his official capacity.  (Doc. No. 1 at 8).

1.  <u>False Arrest Under State Law</u>

Where the facts are not in conflict, the issue of probable cause is a question of law for the trial court.  *Giannis v. City and County of San Francisco*, 78 Cal.App.3d 219, 225, 144 Cal.Rptr. 145 (1978); *People v. Tyler*, 193 Cal.App.2d 728, 735, 14 Cal.Rptr. 610 (1963).  False arrest under state law is a common law tort.  *See Wallace v. Kato*, 549 U.S. 384, 388 (2007).  The elements of the tort of false arrest are defendant arrested plaintiff without a warrant, plaintiff was harmed, and defendant's conduct was a substantial factor in causing the harm.  *Carcamo v. Los Angeles Cnty. Sheriff's Dep't*, 68 Cal. App. 5th 608, 616, 283 Cal. Rptr. 3d 647, 653 (2021).

"A warrantless arrest by a peace officer for a misdemeanor is lawful only if the officer has reasonable cause to believe the misdemeanor was committed in the officer's presence."  Arpin *v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 920 (9th Cir. 2001) (quoting *Johanson v. Dept. of Motor Vehicles,* 36 Cal.App.4th 1209, 1216, 43 Cal.Rptr.2d 42, 46 (1995).  "Probable cause to arrest exists where facts known to the arresting officer would be sufficient to persuade a person of 'reasonable caution' that the individual arrested committed a crime."  *People v. Spencer* (2018) 5 Cal.5th 642, 664 (2018).  Reasonableness under the Fourth Amendment requires "sufficient probability, not certainty."  *Hill v. California,* 401 U.S. 797, 804 (1971); *see also People v. Thompson*, 38 Cal.4th 811, 820 (2006).  "Probable cause is measured by an objective standard based on the information known to the arresting officer, rather than a subjective standard that would take into account the arresting officer's actual motivations or beliefs."  *Gillan v. City of San Marin*, 147 Cal.App.4th 1033, 1045 (2007), *disapproved on other grounds by Leon v. County of Riverside*, 14 Cal.5th 910 (2023).

Unlike a § 1983 claim for a Fourth Amendment claim, a state law claim of false arrest can be brought against a governmental agency under a theory of *respondeat superior*. *See Robinson v. Solano County*, 218 F.3d 1030, 1037–38 (9th Cir. 2000) (recognizing that California public employers can be liable under the doctrine of respondeat superior for employees' acts of false imprisonment), *rev'd in part en banc on other grounds*, 278 F.3d 1007, 1016 (9th Cir. 2002).

Discussion False Arrest Under State Law

Plaintiff's state law false arrest claim against the County of Tulare and the Sheriff is premised upon the theory of *respondeat superior* and depends on whether the Court finds the individual unnamed deputies lacked probable cause to arrest Plaintiff during the course and scope of their duties on the evening of June 3, 2022. *See Robinson*, 218 F.3d at 1037–38. Construing the evidence in the light most favorable to Plaintiff, the Court finds there is no triable issue as to whether the deputies had probable cause to arrest Plaintiff. Thus, Defendants are entitled to summary judgment on Plaintiff's false arrest claim under state law.

Penal Code Section 415(2)

Plaintiff was arrested at approximately 10:00 p.m. on June 3, 2022 for violating California Penal Code § 415(2), which punishes "[a]ny person who maliciously and willfully disturbs another person by loud and unreasonable noise." "Maliciously" means a wish to "vex, annoy, or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law." Cal. Penal Code § 7(4). "Willfully" means "a purpose or willingness to commit the act." *Id*. § 7(1).

The Court notes that Plaintiff appears to conflate the decibel-specific restrictions contained in the Tulare County Code with the broader prohibition on "loud and unreasonable noise" in Penal Code § 415(2). In his Opposition, Plaintiff states "the only operative noise ordinance at [the time of the incident] permitted loud music before 11:00 PM."[8] (Doc. No. 27 at 15). And while the ordinance provides an additional basis for a noise-related citation, Plaintiff cites no authority to suggest that it supersedes the California Penal Code by setting a decibel-level

---

[8] This is a questionable reading of the Ordinance, which explicitly does not permit loud music at any time.

1    floor on what constitutes loud and unreasonable noise.  Indeed, "[a] determination as to what

2    constitutes a 'loud, unnecessary and unusual noise' requires common sense, not a decibel meter."

3    *See Mann*, 155 Cal. App. 3d at 674.

4        It is uncontested that when deputies first reported to the scene of Plaintiff's party around

5    7:40 p.m., they advised him that a neighbor had complained about loud noise, instructed him to

6    turn down the volume, and warned him that if he failed to do so the deputies may take further

7    action.  (Doc. No. 26-2 at 8 ¶ 11; *id* at 30:19-25, 31:20-32:2; Exh. 4 to Doc. No. 26-2).  Thus,

8    Plaintiff was on notice that the loud noise from the party was excessive and was disturbing his

9    neighbors.

10       When the deputies returned to the party around 9:40 p.m. Sheriff's deputies could hear

11    and feel the music while they were inside their patrol vehicles with the windows rolled up and at

12    some distance down the road from the house as they approached the scene.  (Doc. No. 26-2 at 9 ¶

13    15).  The volume of the party was clearly audible to the Court when listening and viewing the

14    body worn camera recordings.  For example, while deputies are speaking to Plaintiff early in the

15    encounter, a member of the band can be heard loudly addressing the crowd over a loudspeaker

16    before launching into a song at high volume that nearly drowns out Plaintiff's words.  (*See* Exh. 6

17    at 0:37-1:35).  Thus, a reasonable officer could conclude that the volume of the music at

18    Plaintiff's party was still excessive.  *See Mann v. Mack*, 155 Cal. App. 3d 666, 674 (Ct. App.

19    1984) ("A determination as to what constitutes a 'loud, unnecessary and unusual noise' requires

20    common sense, not a decibel meter").

21       Sheriff's deputies did not immediately arrest Plaintiff when they arrived a second time.

22    Instead, after some obstinance from Plaintiff in refusing to provide his name, they issued him a

23    citation for violation of § 415, informing him that two more neighbors had complained about the

24    loud music.  (Doc. No. 26-2 at 9-11 ¶¶ 16, 18-19; Exh. 6 at 0:30-6:07; Exh. 7 at 0:55-6:37).

25    Deputy Godinez again warned Plaintiff that if he did not stop disturbing neighbors with the loud

26    noise, he would face further law enforcement consequences.  (Exh. 6 at 3:25-3:30).

27       Plaintiff suggests that deputies lacked probable cause and arrested him because they were

28    "animated by anger and pique" and "because [Plaintiff] failed to obey and, instead questioned the

1   lawfulness of their orders." (Doc. No. 1, ¶ 24). The question with which the Court is concerned

2   is not "why did the officer want to arrest this particular defendant? but rather was there

3   reasonable cause to arrest this particular defendant? The arresting officer's secret intentions,

4   hopes, or purposes have nothing to do with the legality of the arrest." *Baranchik v. Fizulich*, 10

5   Cal. App. 5th 1210, 1218, 217 Cal. Rptr. 3d 423, 430 (2017) (internal quotations and citations

6   omitted).

7       Here, the undisputed evidence reveals (1) at approximately 7:40 p.m. officers arrived at

8   the residence and gave Plaintiff a verbal warning concerning the loud music after receiving a

9   noise complaint; (2) at approximately 9:40 p.m. officers arrived a second time and, after

10  encountering some obstinance from Plaintiff in providing his name and address, issued Plaintiff a

11  citation for the noise; and (3) once officers left the residence, Plaintiff immediately brought out a

12  large speaker and began to play loud music that can be heard clearly in the body worn cameras of

13  Sheriff's deputies as they reapproach the property. (Exh. 10 at 0:35-0:50); (Doc. No. 26-2 at 11-

14  12 ¶ 20, 34:13-20). Given that Plaintiff was given a verbal warning at 7:40 p.m., and then issued

15  a written citation at 9:40 p.m. and advised that failure to comply with the deputies' orders would

16  result in further consequences, Sheriff's deputies had probable cause to believe that Plaintiff was

17  playing loud music with the "intent to annoy or vex" his neighbors, to interfere with the Sheriff's

18  deputies' efforts to enforce the law, or both. *See Rosenbaum v. City & Cnty. of San Francisco*,

19  484 F.3d 1142, 1163 (9th Cir. 2007) (affirming district court's finding that officer had probable

20  cause to issue citation for Penal Code section 415(2) where plaintiff's "amplified sound remained

21  at an unreasonable volume despite police warnings").

22      Deputies were physically present and witnessed Plaintiff's flagrant and continued refusal

23  to turn down the loud music. The Court finds that unrefuted evidence demonstrates that deputies

24  had probable cause to arrest Plaintiff's for violating Penal Code section 415(2). Accordingly,

25  Defendants have a complete defense to Plaintiff's claim of false arrest and are entitled to

26  summary judgment on Plaintiff's First Cause of Action for false arrest.

27      <u>Penal Code Section 148(a)(1)</u>

28      Alternatively, Defendants assert they had probable cause to arrest Plaintiff under

California Penal Code § 148(a)(1), which punishes "[e]very person who willfully resists, delays, or obstructs any public officer [or] peace officer, . . . in the discharge or attempt to discharge any duty of his or her office or employment."

Under California Penal Code § 148(a)(1), "[t]he legal elements of a violation . . . are as follows: (1) the defendant willfully resisted, delayed, or obstructed a peace officer, (2) when the officer was engaged in the performance of his or her duties, and (3) the defendant knew or reasonably should have known that the other person was a peace officer engaged in the performance of his or her duties." *In re Muhammed C*., 95 Cal.App.4th 1325, 1329 (2002) (citations omitted).  In California, the lawfulness of the officer's conduct is an essential element of the offense of resisting, delaying, or obstructing a peace officer.  *See People v. Curtis*, 70 Cal.2d 347, 354–56, 357 n. 9 (1969); *Susag v. City of Lake Forest*, 94 Cal.App.4th 1401, 1409 (Cal.Ct.App.2002).  Physical resistance, hiding, or running away from a police officer, as well as refusing an officer's repeated requests, can constitute a violation of section 148.  *Muhammed C*., 95 Cal.App.4th at 1329–1330.

"Under California law, the fact that someone verbally challenges a police officer's authority or is slow to comply with orders does not mean that he or she has delayed an investigation." *In re Chase C*. 243 Cal.App.4th 107, 117 (2015).  Penal Code §148(a) "does not criminalize mere delay in responding to an officer's orders . . . or a mere refusal to cooperate." *People v. Francis A*. 40 Cal.App.5th 399, 408 (2019); *see People v. Quiroga*, 16 Cal.App.4th 961, 966 (1993) (noting the statute does not criminalize "a person's failure to respond with alacrity to police orders").

While a "mere failure to respond" to an officer's orders is not criminalized under Penal Code § 148, the statute does encompass a plaintiff "affirmatively respond[ing] to police orders with defiance." *See In re Muhammed C*., 95 Cal.App.4th 1325, 1330 (2002) (affirming dismissal of unlawful arrest claim where officer had probable cause to detain plaintiff under § 148 because "[t]hough appellant has a benign interpretation of his hand gesture, the trial court was entitled to interpret the gesture as one of defiance").

Because sheriff's deputies had probable cause to arrest Plaintiff for violation of section

415(2), the arrest was lawful, and Defendants need not demonstrate and the that deputies also had probable cause to arrest Plaintiff for violation of Section 148(a)(1).  *See Magallon-Lopez*, 817 F.3d at 675; *see also Edgerly*, 599 F.3d at 954.  The Court finds the existence of probable cause under Penal Code section 148(a)(1) is an admittedly a closer call.

Defendants contend that sheriff's deputies had probable cause to arrest Plaintiff for violation of Penal Code section 148(a)(1) because he:

> delayed officers by refusing to comply with directives, stating that they would be there until 11 p.m., by refusing to provide identifying information to Officer Godinez, by demanding that a supervisor speak with his friend Junior instead of complying with the officer's request, by repeatedly turning back on amplified music while officers were still at the scene, and by refusing to put his hands behind his back when ordered to do so by three separate officers.

(*Id*.).  The undisputed evidence, including extensive body worn camera footage, depicts Plaintiff repeatedly refusing to comply with the officers' requests and orders, which delayed their efforts to issue him a citation.  Even though Plaintiff ultimately provided his identifying information to Deputy Godinez, the officers reasonably determined that Plaintiff's efforts to resist, delay, or obstruct the deputies' enforcement of the law was continuing, and had not dissipated merely because Plaintiff provided his name for the citation.  *See United States v. Lopez*, 482 F.3d 1067, 1075-78 (9th Cir. 2007) (holding that totality of the circumstances may still support probable cause even if some facts giving rise to probable cause have changed).

While refusal to provide identifying information to law enforcement officers is insufficient by itself to provide probable cause for arrest under § 148(a)(1), probable cause exists when refusal to identify oneself is combined with other factors and acts of obstruction.  *See Maya v. County of San Bernardino*, 2023 WL 4383344 (C.D. Cal. June 1, 2023).  For example, in *People v. Lopez*, 119 Cal. App. 4th 132 (2004), the court rejected a defendant's reliance on *Brown v. Texas*, 443 U.S. 47, 51 (1979), for the proposition that he could not be stopped and arrested for simply refusing to identify himself.  *Id*. at 136.  It reasoned, "[t]he instant case is a far cry from a simple refusal to identify oneself.  Appellant's refusal to identify himself was coupled with conduct that can only be described as belligerent," including refusing to keep his hands visible, refusing to submit to a pat down, and when ordered to sit down, popping back up and yelling

16

"fuck that, you're not touching me, you're not patting me down."  *Id.*

Here, Plaintiff 's defiance does not reach the level exhibited by *Brown*, but the evidence gleaned from the body worn cameras clearly show that Plaintiff ignored the deputies' instructions, disputed their authority, and intentionally brought out a speaker and turned loud music back on after being told that doing so would invite further law enforcement response.  As in *Taylor*, Plaintiff's verbal non-compliance was accompanied with other factors and acts of obstruction.  Thus, under the totality of the circumstances known to the officers at the time, the Court finds deputies alternatively had probable cause to arrest Plaintiff for violation of Penal Code § 148(a)(1).

**B.  Second Cause of Action - False Arrest and Excessive Use of Force under Federal Law, 42 U.S.C. § 1983 Against Unknown Deputies and Sheriff Boudreaux.**[9]  (Doc. No. 1 at 12).

1.  Legal Standard §1983 Claims

Liability under section 1983 arises only upon a showing of personal participation by the defendant.  "There is no *respondeat superior* liability under section 1983." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted). A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations or knew of the violations and failed to act to prevent them.  *Id.*, *see also Starr v. Baca*, 652 F.3d 1202, 1206–07 (9th Cir. 2011).

A local government entity "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978).  "When an individual sues a municipality for violation of a constitutional right, the municipality is liable only if the individual can establish that the municipality 'had a deliberate policy, custom, or practice that was the 'moving force' behind the constitutional violation he [or she] suffered.'" *Lawrence v. City & Cnty. of San Francisco*, 258 F. Supp. 3d 977, 993 (N.D. Cal. 2017), (citing *Monell*, 436 U.S. at 694–95).  "However, to state a *Monell* claim, Plaintiff must

---

[9] The Parties stipulated to the dismissal of the County in the Second Cause of Action.

adequately demonstrate an underlying constitutional violation by a county employee.  *See Scott v. Heinrich*, 39 F.3d 912, 916 (9th Cir. 1994) ("municipal defendants cannot be held liable because no constitutional violation occurred"); *Lockett v. County of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020) ("*Monell* claims . . . require a plaintiff to show an underlying constitutional violation.").

### 2.   Individual Defendants

Fatal to Plaintiff's federal claims against the individual deputies is that not none were named in the Complaint, and Plaintiff has not moved to amend his Complaint to identify them.  At oral argument, Plaintiff's counsel opined that he could amend the Complaint with the names of the individual deputies, who are each being sued in their individual capacities.[10]  However, to date Plaintiff has not filed a motion to amend under Rule 15 and therefore the Court has no basis to find that the Complaint proceeds against the individual deputies.  *See Brass v. Cnty. of Los Angeles*, 328 F.3d 1192, 1195-96 (9th Cir. 2003) (affirming denial of plaintiff's request to substitute four individual defendants for doe defendants, after plaintiff "[had] not even attempted to request leave from the Court to add new parties or to file an amended complaint" but "merely referred to them as defendants in various documents").  Thus, facially the Complaint fails to state any federal claim against the individual deputies.

Even assuming the Complaint identified the individual deputies the Court finds no disputed material facts as to whether Plaintiff's Fourth Amendment rights were violated.  A claim for false arrest is vindicated as a Fourth Amendment claim filed pursuant to 42 U.S.C. § 1983.

---

[10] The incident giving rise to the Complaint took place on June 4, 2022, raising the possibility that the claims may now be time-barred as to any defendant who has not yet been served.  The statute of limitations for a claim of false arrest under California law is one year.  *See* Cal. Code Civ. Proc. 340(c); *see also Milliken v. City of S. Pasadena*, 96 Cal. App. 3d 834, 840 (Ct. App. 1979).  The statute of limitations for a Bane Act claim is two years.  *Fenters v. Yosemite Chevron*, 761 F.Supp.2d 957, 995–96 (E.D. Cal. 2010) (holding Bane Act claim subject to two-year statute of limitations provided by California Code of Civil Procedure section 335.1).  Because section 1983 contains no specific statute of limitation, federal courts apply the forum state's statute of limitations.  *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004); *Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004); *Fink v. Shedler*, 192 F.3d 911, 914 (9th Cir. 1999).  As noted above, the state statute of limitations for false arrest claims is one year, therefore a one-year statute of limitations applies to Plaintiff's federal false arrest claim under the Fourth Amendment.  *See* Cal. Code Civ. Proc. 340(c).

1  *See, e.g., Borunda v. Richmond,* 885 F.2d 1384, 1391 (9th Cir. 1988).  A Fourth Amendment

2  violation occurs when a person is arrested "without probable cause or other justification."  *Lacey*

3  *v. Maricopa Cnty.*, 693 F.3d 896, 918 (9th Cir. 2012) (en banc).  "Probable cause to arrest or

4  detain is an absolute defense to any claim under § 1983 against police officers for wrongful arrest

5  or false imprisonment, as the lack of probable cause is a necessary element of each."  *Lacy v.*

6  *Cnty. of Maricopa*, 631 F. Supp. 2d 1183, 1193 (D. Ariz. 2008).  Probable cause to arrest exists

7  when there is a "fair probability or substantial chance of criminal activity" by the arrestee based

8  on the totality of the circumstances known to the officers at the time of arrest. *Id.* (simplified).

9  This "is not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014).  And it is well-

10  established that "[i]f the facts support probable cause . . . for one offense," an arrest may be

11  lawful "even if the officer invoked, as the basis for the arrest, a different offense" which lacks

12  probable cause.  *United States v. Magallon-Lopez*, 817 F.3d 671, 675 (9th Cir. 2016); *see also*

13  *Edgerly v. City & Cnty. of San Francisco*, 599 F.3d 946, 954 (9th Cir. 2010) ("[P]robable cause

14  supports an arrest so long as the arresting officers had probable cause to arrest the suspect for any

15  criminal offense, regardless of their stated reason for the arrest.").  For the same reasons

16  Plaintiff's false arrest claim fails, his Fourth Amendment claim fails.

17       Plaintiff's Fourth Amendment excessive use of force claims fares not better.  At oral

18  argument, Plaintiff's counsel opined that the excessive force claim was properly analyzed under

19  the Fourteenth Amendment, however the Fourteenth Amendment applies to pretrial detainees

20  once in custody of a jail or prison.  *See Castro v. County of Los Angeles*, 833 F.3d 1060, 1067-68

21  (9th Cir. 2016) (en banc) ("[i]nmates who sue prison officials for injuries suffered while in

22  custody may do so under the Eighth Amendment's Cruel and Unusual Punishment Clause or, if

23  not yet convicted, under the Fourteenth Amendment's Due Process Clause").

24       Here, Plaintiff's allegations of excessive force arose before Plaintiff was booked into the

25  County Jail, thus Plaintiff's claim is properly analyzed under the Fourth Amendment's objective

26  reasonableness standard.  *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 921

27  (9th Cir. 2001) (citing *Graham v. Connor*, 490 U.S. 386, 388 (1989)).  The Fourth Amendment

28  requires law enforcement officers making an arrest to use only an amount of force that is

1  objectively reasonable in light of the circumstances facing them.  *Graham*, 490 U.S. at 395;

2  *Tennessee v. Garner*, 471 U.S. 1, 7–8 (1985).

3       Plaintiff asserts that sheriff's deputies used excessive force in arresting him, specifically

4  that:

> Maldonado suffered physical injury to both of his hands, including bruising because the deputy sheriff that performed the arrest performed a pat-down search of Maldonado's person, using unjustifiable, excessive force, to wit: handling Maldonado's person roughly, prodding and palpating much more intrusively than necessary on and around Maldonado's private parts, and making unwarranted and deliberate rude comment about Maldonado's physical stature.  Further, despite the fact that Maldonado was cooperating completely with the deputies in securing his person with handcuffs, the deputy sheriff that effected the handcuffing did so that one or both of Maldonado's hands suffered visible contusions and limited his range of motion in his hands even after the restraints had been removed.

12  (Doc. No. 1 at 10 ¶ 25).  Defendants contend the undisputed evidence, including the body worn

13  camera footage, contradicts these allegations.  (Doc. No. 26-1 at 7).  The Court agrees.

14       Based on the Court's review of the extensive body worn camera footage from the incident,

15  there is no evidence to support Plaintiff's claims of excessive force.  (*See generally* Exh. 9).  To

16  the contrary, the video shows deputies acting professionally throughout the encounter, attempting

17  to deescalate the situation, and at no time shows them handling Plaintiff roughly or improperly.

18  (*Id.*).  Nor are any comments overheard from any deputy in effectuating the arrest, other than

19  advising Plaintiff to place his hand behind his back and asking if he has any weapons on his

20  person.  Nor does Plaintiff nor anyone in the crowd make any comment to the effect the Plaintiff

21  is being handled roughly or intrusively; the only comment Plaintiff makes concerns the overly

22  tight handcuffs after he arrived at the jail.  (*Id.*).

23       In his Opposition, Plaintiff maintains that the allegations of excessive force are true citing

24  only to a portion of his declaration stating only that the deputies shoved individuals in the crowd

25  while arresting him.  (*See* Doc. No. 27-1 at 2-3 ¶¶ 19, 21-23) (citing Doc. No. 27-2 at 7:23-8:2).

26  In fact, other than Plaintiff mentioning at his deposition two photos of his wrists purporting to

27  show injuries, which were not submitted into evidence, the Plaintiff has provided no support for

28  his claim that he was injured by the deputies' alleged excessive use of force, that overly tight

20

1   handcuffs resulted in injuries, or that any deputy made rude comments to Plaintiff.  (*See generally*

2   Doc. No. 27-1; *see id*. at 11:19-25).  Consequently, Plaintiff claim of injury connected to the use

3   of handcuffs is wholly unsupported as he does not provide any medical records to support his

4   claim that he suffered any injury because of being handcuffed.  *See Arpin v. Santa Calra Valley*

5   *Transp. Agency,* 216 F.3d at 922 (concluding allegations of injury without medical records or

6   other evidence of injury insufficient to establish excessive force).

7          Because Plaintiff fails to meet his burden of proof of providing specific facts to show that

8   the force used was unreasonable or that he sustained any actual injury in connection with the

9   handcuffs, the Court finds no genuine dispute as to any material fact and finds the individual

10  deputies (even if named) would be entitled to summary judgment on Plaintiff's excessive use of

11  force claim.

12                  3.  Sheriff Boudreaux

13          Turning to Sheriff Michael Boudreaux, the Complaint asserts federal claims against him

14  only in his official capacity.  (*See* Doc. No. 1 at 1).  At oral argument, Plaintiff's counsel represented

15  that the Complaint sued Boudreaux in his *individual* capacity.  In addition to this being contradicted

16  by the caption of the Complaint—which explicitly names Boudreaux in his official capacity only

17  (Doc. No. 1 at 1)—there are no allegations in the Complaint that would support an individual

18  capacity claim against Boudreaux.   Rather the Complaint makes only general references to

19  Boudreaux's supervisory role with respect to the deputies involved in the June 3, 2022 incident

20  (*see, e.g*., Doc. No. 1 at 5 ¶ 9) (referring to the actions of "one or more deputies of the defendant,

21  Boudreaux"), or attempts to impute to Boudreaux knowledge of the unlawfulness of Plaintiff's

22  arrest, (*id*. at 6 ¶ 14) ("Boudreaux . . . knew or should have known that Maldonado's arrest was

23  without warrant and without exception to the warrant requirement, that it was effected by his

24  officers without probable cause . . .").  Under federal law, a mere conclusory assertion that a

25  supervisor knew or should have known of unconstitutional conduct by subordinates is insufficient

26  to establish liability; a plaintiff must allege a "factual basis for imputing . . . knowledge" of

27  subordinates' unconstitutional practices as well as culpable action or inaction.  *Call v. Badgley*, 254

28  F. Supp. 3d 1051, 1069 (N.D. Cal. 2017) (citing *Chavez v. United States*, 683 F.3d 1102, 1111 (9th

1   Cir. 2012).  Because the Complaint is devoid of facts alleging that Boudreaux participated in or

2   knew of and acquiesced in the alleged constitutional violations committed by his subordinates,

3   there is no basis to hold him liable in his individual capacity.  *See Taylor*, 880 F.2d at 1045.

4   　　　　As to his official capacity, at oral argument and in their MSJ, Defendants argued that the

5   official capacity claims against the Sheriff are duplicative of the claims against the County, which

6   were dismissed.   While the Court agrees that an official capacity suit against Boudreaux is

7   equivalent to a suit against the County, *see Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71

8   (1989), "[m]any cases [in the Ninth Circuit], including *Streit v. County of Los Angeles*, 236 F.3d

9   552 (9th Cir. 2001) . . . have allowed a Section 1983 suit to proceed against a sheriff's department

10  and its county."  *Steel v. Alameda Cnty. Sheriff's Off*., 428 F. Supp. 3d 235, 241 (N.D. Cal. 2019);

11  *see also Rivera v. Cty. of L.A*., 745 F.3d 384, 389 (9th Cir. 2014) (finding that "municipalities,

12  including counties and their sheriff's departments, can . . . be liable under [Section] 1983 if" the

13  requirements for *Monell* liability are met).   *Streit*, which Defendants cite in support of their

14  argument, held that "both the [Los Angeles Sheriff's Department] and the County [of Los Angeles]

15  are subject to liability under section 1983."  236 F.3d at 555-56.  Admittedly, courts have found

16  other municipal agencies (e.g. a storm drain maintenance district,[11] a county department of

17  corrections[12]) are not separately suable entities under Cal. Govt. Code § 811.2, but the weight of

18  authority permits a plaintiff to sue both a county sheriff's department and the county itself.

19  Accordingly, the Court declines to dismiss Defendant Boudreaux on this basis and considers the

20  official capacity claim.

21  　　　　Plaintiff's *Monell* claim against Boudreaux is premised on the following allegation:

22  　　　　　　The actions of the deputy sheriff, or sheriffs as describe above were
    　　　　　　done . . . pursuant to a policy, custom, or practice of [Tulare] County
23  　　　　　　instituted by Boudreuax [sic] that included maintaining order and
    　　　　　　authority by arresting, transporting, and detaining with or without
24  　　　　　　warrant or probable cause, any person who did not obey a lawful, or
    　　　　　　unlawful order of any Deputy, or the County of Tulare, California.
25

26  (Doc. No. 1, ¶ 16).  Initially, Plaintiff's custom, policy, or practice allegation is so vague as to be

27  ───────────────────

28  [11] *See Bauer v Ventura County*, 45 Cal.2d 276 (1955), cited by Defendants.
    [12] See *Vance v. County of Santa Clara*, 928 F.Supp. 993, 996 (N.D. Cal. 1996)

meaningless.  It describes law enforcement activity in the most general terms, encompassing both constitutional and unconstitutional behavior ("detaining with or without warrant or probable cause . . . any person who did not obey a lawful, or unlawful order"), and cites no facts or prior instances of unconstitutional conduct by TCSO or the County to establish a policy, pattern, or practice.  To allege an unconstitutional policy, a Plaintiff must do so in more than conclusory terms.  *See Conso v. City of Eureka*, 2022 WL 409958, at *1 (N.D. Cal. Feb. 10, 2022) (granting motion to dismiss *Monell* claims where plaintiff "simply makes a bevy of conclusory and argumentative assertions that do nothing more than track the elements of the claims she wishes to advance in threadbare fashion and with no factual development.")

Moreover, as noted above, to prevail on a *Monell* claim, Plaintiff must adequately demonstrate an underlying constitutional violation by one of the Sheriff's deputies.  *Scott*, 39 F.3d at 916 ("municipal defendants cannot be held liable because no constitutional violation occurred"); *Lockett*, 977 F.3d 737, 741 (9th Cir. 2020) ("*Monell* claims . . . require a plaintiff to show an underlying constitutional violation.")  Because the Court finds no genuine dispute as to whether any of the Sheriff's deputies committed an underlying constitutional violation against Plaintiff, the Court finds no genuine dispute as to the existence of an unconstitutional policy or practice by the Sheriff to state a *Monell* claim.  Thus, Defendants are entitled to summary judgment on Plaintiff's Second Cause of Action.

### III.     Third Cause of Action – Violation of California Civil Code § 52.1(Thomas Bane Act) Against Deputies, County, & Boudreaux

1. Legal Standard

California Civil Code § 52.1 ("Section 52.1"), the so-purported "Bane Act," permits a private right of action for damages:

> If a person or persons, whether or not acting under color of law, interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state . . .

Cal. Civ. Code § 52.1(a) (emphasis added).  A claim under section 52.1 requires "an attempted or

23

1    completed act of interference with a legal right, accompanied by a form of coercion. *Jones v.*

2    *Kmart Corp.*, 949 P.2d 941, 942 (1998).  The essence of a Bane Act claim is that a defendant,

3    through threats, intimidation, or coercion, tried to or did prevent the plaintiff from doing

4    something that he had the right to do under the law or to force the plaintiff to do something that

5    he was not required to do under the law.  *Austin B. v. Escondido Union Sch. Dist.*, 57 Cal. Rptr.

6    3d 454, 472 (Cal. Ct. App. 2007) (quotation marks omitted).  Although a complaint need not use

7    the statutory terms "threats, intimidation, or coercion," it must allege facts from which the

8    presence of threats, intimidation, or coercion may be inferred.  *See Lopez v. County of Tulare*,

9    2012 WL 33244, * 11 (E.D. Cal. Jan. 6, 2012).

10          While the question is not a settled one, multiple courts in the Ninth Circuit have

11   concluded that a Bane Act claim may be brought against a municipal entity and that the "person

12   or persons" who may be sued for violating the act include corporations and governmental entities.

13   *See Sanchez v. City of Fresno*, 914 F. Supp. 2d 1079, 1117 (E.D. Cal. 2012); *see also Est. of*

14   *Adkins by & through Adkins v. Cnty. of San Diego*, 2018 WL 1942397, at *6 (S.D. Cal. Apr. 25,

15   2018) (collecting cases).

16                      2.  Discussion

17          Because Plaintiff proceeds only against the County and Boudreaux in his official capacity,

18   Plaintiff's Bane Act claim is based on a theory of *respondeat superior* and thus again depends on

19   whether the Court finds the individual deputies violated the Act.

20          Plaintiff's Bane Act claim appears to be premised largely on the same facts as his

21   construed Fourth Amendment excessive force claim, i.e. that sheriff's deputies used excessive

22   force in arresting him on June 4, 2022.  (*See* Doc. No. 27-1 at 2-4 ¶¶ 19-23).  Plaintiff also states

23   in his declaration that when deputies ordered him to put his hands behind his back to be arrested,

24   "to avoid the violence that the Deputies were clearly threatening, I complies [sic] with their

25   request to put my hands behind my back."  (Doc. No. 27-2 at 7 ¶ 17).

26          Plaintiff again fails to set come forward with any genuine dispute of fact to support his

27   Bane Act claim for the same reasons cited above.  The video recordings depict no evidence that

28   sheriff's deputies used threats, intimidation, or coercion to violate Plaintiff's constitutional rights,

1    or that they used excessive force.  *See Lopez v. County of Tulare*, 2012 WL 33244, * 11 (E.D.

2    Cal. Jan. 6, 2012).  Indeed, as discussed above, the Court finds that no violation of Plaintiff's

3    constitutional rights occurred and that his arrest was lawful, effected pursuant to probable cause,

4    and did not involve excessive force.

5          The body worn camera footage shows that Sheriff's deputies were professional in

6    responding to Plaintiff's repeated efforts to delay their investigation and arrest, and at no point

7    did they use excessive force or threaten Plaintiff with violence if he failed to comply.  (See

8    generally Exh. 9 to Doc. No. 26-2).  Even if Plaintiff believed that he may have been forcibly

9    arrested if he did not comply with orders to put his hands behind his back, this would not

10    constitute a Bane Act violation given that the deputies had probable cause to arrest him.  A

11    number of California court decisions make clear that a plaintiff must allege threats or coercion

12    beyond the coercion inherent in a detention to recover under the Bane Act.  *See, e.g., Allen v. City*

13    *of Sacramento*, 234 Cal.App.4th 41, 183 Cal.Rptr.3d 654, 678 (2015) ("[A] wrongful arrest or

14    detention, without more, does not satisfy both elements of [the Bane Act]."); *Quezada v. City of*

15    *L.A.*, 222 Cal.App.4th 993, 166 Cal.Rptr.3d 479, 491 (2014) ("The coercion inherent in detention

16    is insufficient to show a Bane Act violation."); *Shoyoye v. Cnty. of L.A.*, 203 Cal.App.4th 947,

17    137 Cal.Rptr.3d 839, 849 (2012) ("The [Bane Act] requires a showing of coercion independent

18    from the coercion inherent in the wrongful detention itself.").  Thus, the Court finds that

19    Defendants are entitled to summary judgment on Plaintiff's Bane Act claim.

20          Accordingly, it is **ORDERED**:

21       1.  Defendants' Motion for Summary Judgment (Doc. No. 26) is **GRANTED**.

22       2.  The Clerk of Court is directed to vacate all deadlines, enter judgment in favor of

23          Defendants, and close this case.

24

25    Dated:     November 27, 2024                                                                                                   

26                                          HELENA M. BARCH-KUCHTA

27                                          UNITED STATES MAGISTRATE JUDGE

28